UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

JIMMY WHITE #94447                CIVIL ACTION NO. 16-cv-0643

VERSUS                                         CHIEF JUDGE HICKS

DARREL VANNOY                  MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

### Introduction

Jimmy White ("Petitioner") was charged with manslaughter in connection with the hit and run death of a young man who was trying to help a stranded motorist. A Caddo Parish jury returned a unanimous verdict of guilty. Petitioner was adjudicated a fourth felony offender and sentenced to life imprisonment. His conviction was affirmed on direct appeal. State v. White, 57 So.3d 1078 (La. App. 2d Cir. 2011), writ denied, 71 So.3d 310 (La.). Petitioner also pursued a post-conviction application in state court. He now seeks federal habeas corpus relief on several grounds. For the reasons that follow, it is recommended that his petition be denied.

### Sufficiency of the Evidence

**A. Relevant Evidence**

Linda Swinney was driving home around 10:00 p.m. on December 28, 2007 when her car stalled at the intersection of Linwood Avenue and Corbitt Street in Shreveport. Ms. Swinney activated her hazard lights and got out to try to push the car out of the street. A group of young buys, including 15 year-old Adam Klingensmith, stopped to help.

The boys were attempting to push the car out of the road when another car approached from behind at a high rate of speed. One of the boys tried to flag down the approaching car, then yelled for everyone to get out of the way. The car crashed into Swinney's car and kept going.

The boys first thought everyone had gotten out of the way, but they could not find Adam. His shoes were found at the scene. Another citizen later called police to an area a little over a mile away from the accident, where they found Adam's body lying face down in the road.

Ms. Swinney never saw the other car, and the boys could not identify the car or driver. Police asked the public for information about the incident. Rashida Chitman lived near the intersection of Linwood and Corbitt. Ruthie Vailes, with whom Petitioner had a relationship, was visiting Chitman at about 10:30 p.m. the night of the incident. Petitioner arrived, nervous and upset, and told Vailes that he had been in a wreck on Linwood. Petitioner went to his house, which was just around the corner.

Ms. Chitman heard a news broadcast the next morning that asked for information about the accident. She walked to the home shared by Ms. Vailes and Petitioner to tell them what she heard on the news. She saw that Petitioner's car was parked in the back of the house, which was not its ordinary spot, and she called the police.

Police found Petitioner's car in the backyard with severe damage to the front, especially the grill, hood, and windshield. A pathologist testified that the head and chest injuries that caused Adam's death were consistent with impact from an automobile. Adam's blood was tested for DNA, and it was consistent with blood found in the passenger

seat of Petitioner's car. Petitioner had on a pair of overalls that night, and he took them off before he went to bed. Police found them beside his bed with the key to Petitioner's damaged car in the pocket and Adam's blood on the outside.

### B. State Court Decision

Petitioner was charged with manslaughter, which was defined in La. R.S. 14:31(A)(2)(a), which states, in relevant part: "Manslaughter is. . .[a] homicide committed, without any intent to cause death or great bodily harm. . . [w]hen the offender is engaged in the perpetration or attempted perpetration of any felony not enumerated in Article 30 or 30.1, or of any intentional misdemeanor directly affecting the person. . . ." The State relied on felony hit-and-run as the underlying crime to support the manslaughter charge. Louisiana R.S. 14:100 states: "Hit-and-run driving is the intentional failure of the driver of a vehicle involved in or causing any accident, to stop such vehicle at the scene of the accident, to give his identity, and to render reasonable aid."

Petitioner was appointed counsel on appeal. He also filed a pro se brief and raised the issue of sufficiency of the evidence. Petitioner argued that the State could not show that he committed a homicide when "engaged in the perpetration or attempted perpetration of any felony" because the hit and run was not completed until after the victim was struck.

In evaluating the sufficiency of evidence to support a conviction "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 99 S.Ct. 2781, 2789 (1979). The state appellate court recited the correct Jackson standard and reviewed the evidence before it.

That evidence showed that Petitioner failed to stop after causing the accident, did not give his identity, and did not render reasonable aid. Medical evidence proved that the homicide was committed when the victim was struck by Petitioner's vehicle and killed as a result. The court disagreed with Petitioner's argument that the State could not rely on hit and run as the underlying offense because the hit and run did not occur until after the death of the victim. State v. White, 57 So.3d at 1082-83.

### C. Habeas Analysis

Habeas corpus relief is available with respect to a claim that was adjudicated on the merits in the state court only if the adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d). Thus a state court decision rejecting a sufficiency challenge is reviewed under a doubly deferential standard. It may not be overturned on federal habeas unless the decision was an objectively unreasonable application of the deferential Jackson standard. Parker v. Matthews, 132 S.Ct. 2148, 2152 (2012); Harrell v. Cain, 595 Fed. Appx. 439 (5th Cir. 2015).

There was undoubtedly adequate evidence to support findings that Petitioner ran over the victim and killed him. Petitioner does not really dispute that fact. His argument is that the hit and run was not technically completed until he ran, so he was not engaged in the perpetration of that offense when he struck and killed the victim. To the extent Petitioner challenges the state court's interpretation of the Louisiana statutes to allow his

conviction, the challenges should be denied because the Supreme Court has "repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." Bradshaw v. Richey, 126 S. Ct. 602, 604 (2005).

Petitioner's argument that the evidence was insufficient should also be denied. Petitioner, in one course of conduct, was involved in or caused an accident, after which he failed to stop, identify himself, or render aid. Being involved in or causing an accident is an element of the offense, and Petitioner was undoubtedly engaged in the perpetration of that portion of the crime when he struck the victim. The victim then died from his injuries at some point during or soon after the commission of the hit and run. The state court's rejection of this argument was not an objectively unreasonable application of Jackson, so habeas relief is not warranted.

**Change of Venue**

Petitioner's counsel filed a motion for change of venue based on pretrial publicity. The trial court held a hearing, at which defense counsel introduced a newspaper article that reviewed DWI cases in the area, with mention of Petitioner. She also introduced mailers that were used in a congressional campaign that ended about eight months before trial. The mailers attacked former District Attorney Paul Carmouche based on his role in Petitioner's criminal history. Counsel argued that there had been other newspaper articles and television commercials. Judge Ramona Emmanuel denied the motion for change of venue, with the understanding that defense counsel could re-urge the motion during jury selection

and that the court would allow individual voir dire of prospective jurors regarding pretrial publicity. Tr. 309-23.

Petitioner raised a pro se issue on direct appeal that the trial court erred in denying his motion for change of venue. (He later raised the issue again in a post-conviction application.) Petitioner argued the denial deprived him of a right to a fair trial by an impartial jury. The state appellate court addressed the issue at length. It noted that the prosecutor questioned each panel of prospective jurors as to whether any of them had heard anything about the case. Only five potential jurors had heard about it. All five went through individual voir dire, where the prosecution and defense were able to question the potential jurors about their knowledge of the case. No challenges were made as to two of the members, but three of them were excused for cause. The appellate court found that the language in the political mailers was prejudicial to Petitioner, but Petitioner did not present evidence that there was prejudice in the collective mind of the community such that a fair trial would have been impossible. The court also pointed to a lack of evidence regarding the number of persons to whom the mailers were sent, the circulation of the newspaper that printed the articles, and the limited number of venire members who had any knowledge of the case. State v. White, 57 So.3d at 1086-87.

"The Sixth Amendment secures to criminal defendants the right to a trial by an impartial jury." Skilling v. U.S., 130 S.Ct. 2896, 2912-13 (2010). Pretrial publicity may influence a jury pool and warrant a change of venue in two contexts. The first is in cases such as Rideau v. Louisiana, 83 S.Ct. 1417 (1963) where a local television station repeatedly broadcast a police interrogation of the suspect that was done without counsel

and produced a confession. Another example is <u>Sheppard v. Maxwell</u>, 86 S.Ct. 1507 (1966) in which news reporters extensively covered the story of Sam Sheppard, jurors became celebrities, newsmen practically took over the courtroom, and a "carnival atmosphere" pervaded the trial. There was a reasonable amount of publicity associated with this crime, but there was not substantial evidence that it rose to the level that potential jurors could not reasonably be expected to put it out of mind. Just as the Court in <u>Skilling</u> concluded that the infamous Enron executive's trial was not one in which prejudice was presumed, there is no such presumption in this case.

The inquiry on the second context is whether actual prejudice infected the jury. There is no "hard-and-fast formula" that dictates the necessary depth or breadth of voir dire, and the process is particularly within the province of the trial judge. <u>Skilling</u>, 130 S.Ct. at 2917. When pretrial publicity is an issue, primary reliance on the judgment of the trial judge makes especially good sense because she sits in the locale where the publicity is said to have had its effect. <u>Id</u>. at 2918. The trial judge in this case allowed the attorneys to individually question the jurors about their exposure to pretrial information about the case and excluded all three jurors who were challenged.

This court must review the state court's decision under the deferential standard of 28 USC § 2254(d). There is no basis for finding that the state court decision was contrary to, or involved an unreasonable application of, clearly-established federal law as determined by the Supreme Court. Relief is also available under the statute if the state court adjudication was based on an unreasonable determination of the facts in light of the evidence presented in the state court. In making that assessment, it must be kept in mind

that determinations of demeanor and credibility of the venire are peculiarly within the trial judge's province. Uttecht v. Brown, 127 S.Ct. 2218, 2224 (2007). Both the trial judge and the state appellate court in this case carefully reviewed the jury selection process with an eye toward whether any juror was improperly influenced by pretrial publicity. The state court's adjudication of this claim survives review under the deferential habeas standard.

**Other Crimes Evidence**

Defense counsel filed a motion in limine and asked the court to exclude all evidence of Petitioner's drinking or intoxication near the time of the crime. She argued that intoxication was not an element of the charged offense and that such evidence would be prejudicial. The trial judge denied the motion based on a finding that the evidence was integral to the events and not unfairly prejudicial. Tr. 334-39. The state appellate court applied Louisiana evidence rules that allow the admission of such other crimes evidence if relevant to factors such as motive, intent, or when it relates to conduct that constitutes an integral part of the act or transaction at issue. It determined that the testimony regarding alcohol usage was properly admitted as such *res gestae* evidence. Furthermore, the alcohol usage evidence potentially explained the underlying cause of the accident and provided a motive for Petitioner fleeing the scene. State v. White, 57 So.3d at 1083-85.

Petitioner's primary argument is that the Louisiana courts violated their own jurisprudence regarding the admission of evidence. But federal courts do not grant habeas relief based on mere errors in the application of state evidentiary rules or even consider it relevant whether state evidentiary rules were satisfied. Only federal constitutional errors that satisfy the demanding standards of Section 2254 merit habeas relief. The Due Process

Clause provides a mechanism for relief when a state court wrongfully admits evidence, but only if the evidence is so unduly prejudicial that it renders the trial fundamentally unfair. Bigby v. Cockrell, 340 F.3d 259, 271-72 (5th Cir. 2003), citing Dawson v. Delaware, 112 S. Ct. 1093 (1992) and Estelle v. McGuire, 112 S.Ct. 475 (1991). The evidence must have had a substantial and injurious effect or influence in determining the jury's verdict. Wood v. Quarterman, 503 F.3d 408, 414 (5th Cir. 2007).

The state court's decision to admit the evidence of alcohol use appears to have been a reasonable and correct application of Louisiana evidence rules. The admission of the evidence did not render the trial unduly prejudicial or fundamentally unfair, largely for the reasons stated by the state courts. Evidence of alcohol use was relevant to explain why Petitioner would have been involved in such a crash and then flee the scene rather than stop as required by law. Habeas relief is not permitted on this claim.

Petitioner also argues that the admission of the evidence is in conflict with Huddleston v. United States, 108 S.Ct. 1496 (1988). The Huddleston decision rejected an argument that a federal trial court must find by a preponderance of the evidence that a defendant committed an act before it can be admitted as "similar act" evidence under Federal Rule of Evidence 404(b). Huddleston is an interpretation of the federal rules of evidence, which do not apply to state trial courts. F.R.E. 1101(a). It did not issue any holding on a constitutional rule that would apply to Petitioner's case.

**Denial of Right to Testify**

Petitioner asserts a claim that defense counsel denied him the right to testify. A defendant has a fundamental constitutional right to testify. Rock v. Arkansas, 107 S.Ct.

2704 (1987).  A waiver of the right must be knowing and voluntary, and it must be made by the defendant rather than his counsel.  Emery v. Johnson, 139 F.3d 191, 198 (5th Cir. 1998).  When the defendant contends that trial counsel interfered with his right to testify, the "appropriate vehicle for such claims is a claim of ineffective assistance of counsel." Sayre v. Anderson, 238 F.3d 631, 634 (5th Cir. 2001).  Petitioner asserts his claim under a stand-alone heading and repeats it as an ineffective assistance of counsel claim.

To establish ineffective assistance of counsel, Petitioner must demonstrate both deficient performance by his trial counsel and prejudice resulting from that deficiency. Strickland v. Washington, 104 S.Ct. 2052, 2064 (1984).  In determining whether counsel's performance was deficient, the court must be highly deferential to counsel's trial strategy. In examining counsel's decision on whether a defendant should testify, the court must keep in mind that the decision on what to recommend is a judgment call that should not easily be condemned with the benefit of hindsight.  US v. Mullins, 315 F.3d 449, 453 (5th Cir. 2002).

Petitioner presented these claims in a post-conviction application that was summarily denied on the merits.  Tr. 1456-58, 1517, 1582-83.  These claims were adjudicated on the merits in state court, so habeas relief is available only if that adjudication resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court.  28 USC § 2254(d); Harrington v. Richter, 131 S.Ct. 770, 786 (2011).

The post-conviction proceedings in state court included an affidavit from defense counsel in which she stated that she gave appropriate advice to her client on various

matters, including his right to testify. Tr. 1455. The trial transcript shows that, after the State rested, the following exchange occurred outside the presence of the jury:

> "Ms. Whatley: Yes, Your Honor. Prior to the defense resting, I would like to make of record that I have discussed with Mr. White his right to take the stand, as well as his right not to take the stand. I have discussed the pros and cons of that with Mr. White. It is my understanding at this time that Mr. White does not wish to take the stand.
>
> The Court: Mr. White, you just heard the statements of your counsel; is that correct?
>
> The Defendant: Yes, ma'am.
>
> The Court: Are those statements made by her correct?
>
> The Defendant: Yes, ma'am.
>
> The Court: Is that what you wish to do –
>
> The Defendant: Yes, ma'am.
>
> The Court: - - not testify?
>
> The Defendant: Yes, ma'am." (Tr. 738-39).

Petitioner represents in his memorandum that he "practically begged" counsel to let him testify, but counsel warned him that the district attorney was crafty and would use his criminal past against him. Petitioner states that he wanted to testify despite that advice. The record quoted above shows that Petitioner was given every opportunity to state that desire, but he clearly told the court that he did not wish to testify. That was understandable, given his lengthy criminal history that could have been used to impeach him. The record shows that counsel's performance was not deficient, and the state court's denial of these

claims was not an unreasonable application of Strickland or any other clearly established Supreme Court precedent.

**Ineffective Assistance of Counsel**

Petitioner also asserts an ineffective assistance of counsel claim based on counsel's alleged failure to object to "other crimes" evidence in the form of prior convictions. Petitioner does not contend that the State actually introduced his prior convictions into evidence or presented the information to the jury. Rather, he argues that his prior convictions were made known through pretrial publicity and that counsel should have raised an objection or requested a mistrial.

Counsel did file a motion for change of venue based on publicity, but the motion was found to lack merit. The prospective jurors were carefully examined about their prior knowledge of the case, and those who were challenged by the defense were excluded from the jury. There is no evidence to support the contention that the members of Petitioner's jury were made aware, by publicity or otherwise, of Petitioner's criminal history.

The state courts summarily rejected this argument during the post-conviction process. The claim was adjudicated on the merits in state court, so habeas relief is available only if that adjudication resulted in a decision that was contrary to, or involved an unreasonable application of, Strickland or other clearly established federal law. Harrington, 131 S.Ct. at 786. The state court's rejection of this claim was entirely reasonable given its lack of factual basis.

**Cumulative Error**

In his final claim, Petitioner argues that the combination of erroneous trial court rulings and mistakes by trial counsel denied him a fair trial. Petitioner argues that he is entitled to habeas relief based on the cumulative error doctrine. Cumulative error on federal habeas review is a narrow and rare form of due process violation. Derden v. McNeel, 978 F.2d 1453, 1461 (5th Cir.1992) (en banc). The petitioner must show, among other things, that individual errors of constitutional dimension (rather than mere violations of state law) so infected the entire trial that the resulting conviction violates due process. Allen v. Vannoy, 659 Fed. Appx. 792, 818 (5th Cir. 2016). Petitioner has not come close to satisfying this demanding standard. He was faced with overwhelming evidence of his guilt. Counsel did the best she could under the circumstances, and the trial court acted reasonably on the defense's motions and objections.

Accordingly,

It is recommended that Petitioner's Petition for Writ of Habeas Corpus be denied.

**Objections**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b). Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Section 2253(c)(2). A party may, within fourteen (14) days from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a certificate of appealability should issue.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 16th day of May, 2019.

Mark L. Hornsby
U.S. Magistrate Judge